**LAW OFFICE OF CLIFFORD D. SWIFT III**
BY: Clifford D. Swift III

P.O. Box 9030
Lancaster, PA 17604-9030
(223) 529-6901
Fax (717) 222-5566
Email: cswift@cdswiftlaw.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LILIANA BANCIU<br>509 Byberry Road<br>Philadelphia, PA 19116 | : | |
| | : | CIVIL ACTION |
| v. | : | No. |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY<br>150 North Radnor-Chester Road<br>Radnor, PA 19087 | : | **ERISA- JURY TRIAL IS NOT REQUESTED** |

**COMPLAINT**

**I. Jurisdictional Statement**

1. Liliana Banciu's claim for Long Term Disability Benefits relates to an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. The subject Group Long Term Disability Plan of the Thomas Jefferson University ("Jefferson"), her employer, constitutes a plan under ERISA. Plaintiff alleges that this Court's jurisdiction is additionally invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f).

2. At all times relevant herein, and for a significant period of time prior thereto, Ms. Banciu was a Certified Nursing Assistant, employed by Jefferson, and as such has standing to bring this

action under ERISA, 29 U.S.C. § 1132(a). She is a vested "participant" in the group Long Term Disability Plan within the meaning of 29 U.S.C. § 1002(2)(7).

3. Venue under the group Long Term Disability Plan is proper under ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because such action may be brought where (1) the plan is administered, (2) where the breach took place, or (3) where the Defendant resides or may be found.

4. Venue is proper in the Eastern District of Pennsylvania. 29 U.S.C. 1132(e)(2), 28 U.S.C. § 1391.

## II. Nature of Action

5. This is a claim for an award to Plaintiff of Long Term Disability Insurance Benefits pursuant to a policy of insurance underwritten by Lincoln National Life Insurance Company ("Lincoln") to fund and provide claims administration services to the Long Term Disability Benefits Plan ("LTD Plan") to employees of Jefferson. This action is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

## III. The Parties

1. Plaintiff, Lilian Banciu ("Ms. Banciu"), is an adult individual who is a citizen of the Commonwealth of Pennsylvania, County of Philadelphia, residing at 509 Byberry Road, Philadelphia, PA 19116.

2. At all times relevant, Ms. Banciu was a Certified Nursing Assistant employed by the policyholder, Jefferson. Ms. Banciu's last day of work for Jefferson was December 17, 2021.

3. Defendant, Lincoln National Life Insurance Company ("Lincoln") is an underwriter of disability insurance coverage and life insurance coverage applicable to this action. At all times relevant hereto, Lincoln was doing business throughout the United States and within the Eastern District of Pennsylvania with a principal place of business located in the Commonwealth of

Pennsylvania, County of Delaware, at 150 North Radnor-Chester Road, Radnor, Pennsylvania 19087; and was providing welfare benefits, including disability insurance benefits payable under the Plan.

4. At all times relevant hereto, the LTD Plan constitutes an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Ms. Banciu received coverage under the LTD Plan as a "participant" as defined by 29 U.S.C. § 1002(7).

5. At all times relevant, Lincoln was a fiduciary of the Long Term Disability Plan within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002(21)(A) in that Lincoln was appointed by the LTD Plan as Claims Administrator for the Plan as a "named fiduciary" and exercised authority and control over the payment of Long Term Disability benefits, which are Plan assets.

**IV. Policies**

6. On January 1, 2021, Lincoln issued Group Long Term Disability ("LTD") Insurance coverage to Jefferson, Policy No. GD/GF3-890-LF0369-01. That Policy provides a monthly benefit of 60% of a covered employee's Pre-Disability Earnings up to a maximum of $15,000.00 per month. The Policy contains a 180 day Elimination Period and provides monthly benefits to the Covered Employee's Social Security Normal Retirement Age ("SSNRA"). In the case of Ms. Banciu, the SSNRA year being 2040. **Attached as Plaintiff's Exhibit 1.**

7. According to the LTD Policy *"Disability" or "Disabled"* applicable to Class 2 employees means *"if the Covered Person is eligible for the 24 Month Own Occupation benefit, ... that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation."*

8. After 24 months of payments, "Disability" means *"the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."*

9. Ms. Banciu's pre-disability earnings were $37,357.80 annually or $3,113.15 a month.

10. Ms. Banciu is therefore entitled to a gross monthly LTD benefit of $1,867.89, less deductible sources of income.

## V. Failure to Pay Benefits Due Under the Long Term Disability Plans
## I. The Disability Claim – Extensive Medical History

11. On December 12, 2021, Ms. Banciu slipped and fell injuring her right knee.

12. On December 12, 2021, Ms. Banciu was transported by ambulance to the Emergency Room at Jefferson University Hospital where she was examined, had X-rays taken and was discharged with a diagnosis of right knee contusion and given a temporary out of work note.

13. Ms. Banciu returned to work and despite her complaints of right knee pain, she was scheduled to work 12 hour shifts and ultimately fell in an examination room at work, further injuring her right knee.

14. On December 18, 2021, Ms. Banciu underwent an initial examination by Craig Rubenstein, MD. Dr. Rubenstein noted that on examination, that the outer edge of Ms. Banciu's right patella is tender and is also tender along the retinaculum. Dr. Rubenstein prescribed a knee orthotic immobilizer.

15. On December 23, 2021, Ms. Banciu was examined by Craig Rubenstein, MD, who noted that Ms. Banciu is still having pain and instability in her right knee.

16. On January 4, 2022, Ms. Banciu underwent physical therapy where it was noted that Ms. Banciu's pain is 5/10 at best and 9/10 at its worst.

17. On January 12, 2022, Ms. Banciu underwent physical therapy with minimal improvement in right knee pain noted.

18. On January 13, 2022, Ms. Banciu was examined by Craig Rubenstein, MD, who noted that Ms. Banciu continues to have pain behind the right kneecap.

19. On February 10, 2022, Ms. Banciu was examined by Craig Rubenstein, MD, who noted that despite additional therapy and use of a brace, Ms. Banciu is still having significant pain and cannot stand and work all day.

20. On February 16, 2022, an MRI of the right knee showed mild patellar chondrosis (chondromalacia patellae, cartilage loss on the surface of the knee cap, caused by direct impact or overuse) with mild edema (swelling) in superolateral Hoffa's fat pad (soft tissue below knee cap) which can be seen with patellar maltracking (improper movement of knee cap).

21. On February 25, 2022, Ms. Banciu was examined by Craig Rubenstein, MD, who noted that Ms. Banciu had stabbing pain in her right knee when she bends or straightens it.

22. On March 11, 2022, Craig Rubenstein, MD, performed a viscosupplementation injection into Ms. Banciu's right knee.

23. On March 17, 2022, Craig Rubenstein, MD, performed a viscosupplementation injection into Ms. Banciu's right knee.

24. On March 23, 2022, Craig Rubenstein, MD, performed a viscosupplementation injection into Ms. Banciu's right knee.

25. On April 4, 2022, Ms. Banciu was examined by Craig Rubenstein, MD, who noted that Ms. Banciu has stabbing pain and a hard time using her knee.

26. On April 25, 2022, Ms. Banciu was examined by Craig Rubenstein, MD, who diagnosed Ms. Banciu with chondromalacia patellae, right knee.

27. Between December 7, 2022 and February 1, 2024, Craig Rubenstein, MD, performed a viscosupplementation injections into Ms. Banciu's right knee on at least 9 occasions.

28. On February 1, 2024, Craig Rubenstein, MD completed a Physical Residual Functional Capacity Questionnaire requested by Lincoln in which Dr. Rubenstein noted that Ms. Banciu had moderate pain in her right knee that is exacerbated with activity and that she can stand for only 30 minutes in an 8 hour day.

29. On October 3, 2024, Ms Banciu was examined by Orthopedic Surgeon Eric Buontempo, DO who indicated that Ms. Banciu had tenderness along the anterior medial joint line and over her right patella. Ms.Banciu's active range of motion of her knee is 7 to 95° and passive motion is 0 to 105° with patellofemoral crepitation and pain. Ms. Banciu expressed severe anterior pain throughout her range of motion.

30. On November 1, 2024, Ms Banciu was examined by Orthopedic Surgeon Eric Buontempo, DO who indicated that Ms. Banciu has tenderness along the anterior medial joint line and over her right patella. Active range of motion of her knee is 7 to 95° and passive motion is 0 to 110° with patellofemoral crepitation and pain. She has anterior pain throughout her range of motion.

31. On December 9, 2024, an MRI of the right knee showed noted anatomic alignment, no acute fracture or bone bruise, trace swelling and trace baker's cyst, incidental smaller ganglion cyst (benign). The edema in the Hoffa's pad was seen again.

32. On January 3, 2025, Ms Banciu was examined by Orthopedic Surgeon Eric Buontempo, DO who indicated that her right knee revealed marked tenderness along the anterior lateral joint fine and that there is also tenderness over the lateral IT band and minor tenderness over the patellar tendon. Dr. Buontempo indicated that active range of motion of Ms. Banciu's knee is 7 to 75° and passive motion is 0 to 110° with patellofemoral crepitation and pain. Ms. Banciu also has anterior pain throughout her range of motion.

33. On March 7, 2025, Ms Banciu was examined by Orthopedic Surgeon Eric Buontempo, DO who diagnosed Ms. Banciu with contusion, right knee; sprain of right knee; and aggravation osteoarthritis, right knee.

34. On March 25, 2025, Ms. Banciu was seen by PT Tom Thomas who indicated that Ms. Banciu's functional limitations include Walking: 10 minute tolerance; Prolonged Bending: 20 minutes tolerance; Stairs: limited to once per day; Squatting: unable, bends from back.

35. On March 31, 2025, Ms. Banciu was seen by PT Tom Thomas who indicated that Ms. Banciu's functional limitations include Walking: 10 minute tolerance; Prolonged Bending: 20 minutes tolerance; Stairs: limited to once per day; Squatting: unable, bends from back.

**VI. The Disability Claim – Claim for STD and LTD Benefits**

36. Prior to December 18, 2021, Ms. Banciu was a Certified Nursing Assistant at Jefferson.

37. On or about December 18, 2021, Ms. Banciu applied for a leave of absence and disability benefits due an inability to perform the material and substantial duties of her Regular Occupation due to knee and back pain.

38. Ms. Banciu was awarded Short Term Disability ("STD") benefits effective December 25, 2021 through June 17, 2022.

39. By letter dated May 12, 2022, Lincoln notified Ms. Banciu that LTD benefits had been approved effective June 18, 2022.

40. By letter dated April 6, 2024, Lincoln notified Ms. Banciu that her claim for LTD benefits had been terminated effective April 4, 2024.

41. On June 5, 2024, Ms. Banciu was approved for SSDI benefits in the amount of $1,247.00 per month effective March 2024.

42. By letter dated June 12, 2024, Lincoln demanded that Ms. Banciu repay $789.76 as an overpayment due to her receipt of SSDI benefits.

43. On August 8, 2024, Ms. Banciu paid Lincoln $789.76 as an overpayment due to her receipt of SSDI benefits.

44. On or about November 1, 2024, Ms. Banciu filed an appeal of Lincoln's decision to deny LTD benefits after April 4, 2024.

45. By letter dated December 19, 2024, Lincoln notified Ms. Banciu that it had partially completed its review of Ms. Banciu's appeal and granted LTD benefits for the period from April 5, 2024 through June 16, 2024.

46. By this same letter dated April 6, 2024, Lincoln notified Ms. Banciu that Lincoln had terminated her claim for LTD.

## VII. The Disability Claim – Appeal of the Denial of LTD Benefits

47. On July 7, 2025, Ms. Banciu notified Lincoln of her intent to appeal Lincoln's decision to terminate LTD benefits.

48. On or about July 7, 2025, Ms. Banciu filed an administrative appeal of Lincoln's April 6, 2024 decision to terminate LTD benefits.

49. In the appeal, Ms. Banciu argued that she was disabled, which was evidenced by the fact that she suffered from the disabling symptoms of knee pain which was supported by the medical records and statements of her treating physicians.

50. Lincoln conducted only a paper review of Ms. Banciu's claim for LTD benefits and failed to have Ms. Banciu examined by a medical professional appropriate to review the conditions that formed the basis of her disabling conditions.

51. Lincoln cherry picked amongst the medical records provided by ignoring those medical records and reports supporting Ms. Banciu's ongoing disability.

52. Lincoln required that Ms. Banciu apply for SSDI benefits and pay back to Lincoln the overpayment resulting from the award of SSDI benefits, but then totally ignored the decision of the Social Security Administration supporting Ms. Banciu's inability to engage in any gainful activity .

53. By letter dated August 26, 2025, Lincoln notified Ms. Banciu that it was upholding its decision to terminate LTD benefits and indicated that Ms. Banciu had until August 25, 2026 to file a lawsuit.

54. In accordance with ERISA, Ms. Banciu has exhausted all of her administrative remedies.

**COUNT I. – FIRST CAUSE OF ACTION**
**AGAINST LINCOLN NATIONAL INSURANCE COMPANY**
**[FOR DECLARATORY RELIEF PURSUANT TO 29 U.S.C. § 1132(a)(1)(b)]**

55. Paragraphs 1 through 54 are incorporated herein by reference as if fully set forth at length.

56. An actual controversy exists between Ms. Banciu and Lincoln arising out of the events alleged herein above. Ms. Banciu contends that Lincoln has no legal basis for terminating LTD benefits, which have been wrongfully withheld.

57. Ms. Banciu contends that the termination of LTD benefits is a breach of the Group Long Term Plan; the practices of Lincoln should be estopped on the basis of equity; that the practices of Lincoln are arbitrary and capricious and are barred as a matter of law.

58. Ms. Banciu contends that Lincoln has denied her a "full and fair review" of all of her records submitted by failing to consider information directly related to her LTD claim, minimized and/or failed to review or consider the findings of her treatment providers that she is disabled in order to wrongfully withhold LTD benefits.

59. Ms. Banciu contends that the decision to terminate LTD benefits and deny her appeal was wrongful, unreasonable, irrational, arbitrary and capricious, solely contrary to the evidence and contrary to the terms of the LTD Policy and the law and an abuse of discretion.

**COUNT II – SECOND CAUSE OF ACTION AGAINST LINCOLN NATIONAL LIFE INSURANCE COMPANY [FOR RECOVERY OF LTD PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)]**

60. Paragraphs 1 through 59 are incorporated herein by reference as if fully set forth at length.

61. Lincoln wrongfully denied LTD benefits based on an unfair, incomplete, arbitrary and capricious review of Ms. Banciu's medical information.

62. Under the terms of the Group LTD Plan, Lincoln unreasonably breached its promise to provide Ms. Banciu with certain LTD benefits. To date, Lincoln has failed to honor this promise and continues to refuse to pay Ms. Banciu all benefits to which she is rightfully entitled.

63. Ms. Banciu has satisfied all conditions precedent under the Group LTD Plan and is thus eligible to receive LTD benefits for the period from June 16, 2024 until the present and beyond.

64. Ms. Banciu has not waived or otherwise relinquished her entitlement to benefits under the Group LTD Plan.

65. Ms. Banciu seeks reimbursement and compensation for any and all benefits she should have received under the Group LTD Plan.

66. Lincoln breached its obligations under ERISA to provide Ms. Banciu benefits even though her benefits are covered under the terms of the Group LTD Plan.

67. As a direct and proximate result of the aforementioned conduct of the Lincoln in failing to pay benefits to Ms. Banciu, she has been damaged in an amount equal to the amount of benefits to which she is entitled under the terms of the LTD Plan.

**WHEREFORE**, Plaintiff Liliana Banciu prays for judgment as follows:

A. On Count I:

1. A declaration that Ms. Banciu is disabled and entitled to the payment of benefits under the Group LTD Plan;

2. A declaration that Lincoln is hereinafter estopped from wrongfully denying Ms. Banciu's benefits under the Group LTD Plan without a legal basis to do so;

3. A declaration that Lincoln is hereinafter estopped from denying Ms. Banciu's benefits as a denial of such benefits is a breach of the Group LTD Plan;

4. A declaration that Lincoln is hereinafter estopped on the basis of equity from continuing to deny disability benefits wrongfully withheld from Ms. Banciu;

5. A declaration that Lincoln ia hereinafter estopped from wrongfully denying benefits to Ms. Banciu contrary to clear, compelling and substantial medical and functional evidence;

6. Ms. Banciu requests the payment of reasonable attorney fees, costs and interest; and

7. Ms. Banciu requests such other and further relief as the Court deems appropriate.

B. On Count II:

1. Plaintiff seeks a declaration of Ms. Banciu's right to benefits under the terms of the Group LTD Plan;

2. Payment of all past benefits due Ms. Banciu under the terms of the Group LTD Plan, with an award of pre-judgment interest;

3. Ms. Banciu requests the payment of reasonable attorney fees, costs and interest; and

4. Ms. Banciu requests such other and further relief as the Court deems appropriate.

Respectfully submitted,

Clifford D. Swift III (Attorney ID 66284)

Law Office of Clifford D. Swift III
P.O. Box 9030
Lancaster, PA 17604-9030
Ph. (223) 529-6801
Fx. (717) 222-5566
Email: cswift@cdswiftlaw.com

**Attorney for Plaintiff**
**Liliana Banciu**

Date: August 21, 2026

**ERISA JURY TRIAL NOT DEMANDED**